The LUBRIZOL
CORPORATION, Appellant,

v.

EXXON CORPORATION and Exxon
Research and Engineering
Company.

No. 90–5179.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Feb. 7, 1991.

Decided April 8, 1991.

Richard S. Zackin, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., Patrick F. McCartan, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for appellant.

Charles A. Wright, Austin, Tex., John J. Carlin, Jr., Carlin, Maddock, Fay & Cerbone, Florham Park, N.J., for appellees.

Before SCIRICA and HIGGINBOTHAM, Circuit Judges, and POLLAK, District Judge *.

* The Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

SCIRICA, Circuit Judge.

In this appeal, The Lubrizol Corporation ("Lubrizol") challenges the district court's order dismissing its complaint on the grounds of claim and issue preclusion.[1] Because we believe this action is barred by applicable principles of claim preclusion, we will affirm.

I.

In 1982, Lubrizol filed suit in United States District Court for the District of New Jersey against the Exxon Corporation ("Exxon") and the Exxon Research and Engineering Co. ("Exxon Research"), alleging patent infringement. *In re Lubrizol/Exxon Patent Controversy*, Nos. 82–2049 and 82–2557 (D.N.J. filed Jun. 28, 1982). The district court entered a protective order to prevent disclosure of confidential information. Lubrizol later learned that Exxon had placed protected information on a computer system. In February 1984, Lubrizol moved for sanctions, claiming that this computerization had violated the protective order. In August 1984, Lubrizol learned that the computer center where the information was stored was operated as a joint venture known as GATES. GATES is a litigation support center controlled by five major oil companies, four of whom are competitors of Lubrizol. Lubrizol then renewed its motion for sanctions, alleging that Exxon had exposed protected information to Lubrizol's competitors, and had concealed the nature of the GATES venture.

In September 1984, the parties were engaged in settlement negotiations and requested that the district court postpone the hearing on the renewed motion for sanctions. This request was granted. On September 27, the parties executed a Settlement Agreement in which Lubrizol covenanted that it "releases, and will not assert, any claim or counterclaim made in the consolidated New Jersey action...." App. at 20–21.

In May 1985, Lubrizol filed a diversity action in United States District Court for the Southern District of Texas ("the Texas Action") against Exxon, the GATES Data Center, and two Exxon employees, alleging fraud with respect to the computerization of Lubrizol's confidential information. Lubrizol claimed that the defendants had misrepresented that the information would be protected, and had concealed the fact that it was accessible to Lubrizol's competitors. The Texas Action involved the same evidence Lubrizol had presented in its motions for sanctions in the New Jersey action. Exxon filed a motion to dismiss asserting that Lubrizol's claims were released by the Settlement Agreement, and filed its own counterclaim alleging that Lubrizol breached the Settlement Agreement by suing on this "computer dispute."

The Texas district court converted Exxon's motion to dismiss into a motion for summary judgment and denied it initially. But during trial, the district court reconsidered this ruling. The court held that the computer dispute fell within the definition of "claims" released by the Settlement Agreement, and granted summary judgment to Exxon on Lubrizol's claims. This order was affirmed by the Court of Appeals for the Fifth Circuit. *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279 (5th Cir. 1989). Before the district court, Lubrizol presented extrinsic evidence which it claimed revealed that the parties did not intend for the Settlement Agreement to release the computer dispute. The Court of Appeals held that the parol evidence rule barred consideration of this evidence. Exxon's counterclaim in the Texas Action is still pending.

Relying upon the same evidence presented in the Texas Action, Lubrizol filed the current diversity action in United States District Court for the District of New Jersey against Exxon and Exxon Research,

---

**1.** Claim preclusion and issue preclusion are the currently accepted terms for two different applications of the doctrine of res judicata. *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 n. 4 (3d Cir.1984). Issue preclusion is also referred to as collateral estoppel. *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir.1988).

seeking reformation of the Settlement Agreement to reflect the parties' true intent. *Lubrizol Corp. v. Exxon Corp.*, No. 89–4220 (D.N.J. filed Oct. 12, 1989). Lubrizol claims that the parties never intended for the Settlement Agreement to release the computer dispute, and that the Settlement Agreement should be reformed because of "mistake." Lubrizol claims there was a "mutual mistake," because neither party intended to enter into an agreement that would release the computer dispute. App. at 11–14. In the alternative, Lubrizol claims that it made a "unilateral mistake" induced by Exxon's inequitable conduct. *Id.* at 14–16. Lubrizol also seeks compensatory and exemplary damages. *Id.* at 17. The district court held that the judgment in the Texas Action precludes Lubrizol's claim. We agree.

## II.

█ Lubrizol admits it is bound by the judgment in the Texas Action holding that the Settlement Agreement encompasses the computer dispute. Hoping to revive its ability to sue on the computer dispute, Lubrizol now seeks to reform the Settlement Agreement to exclude that dispute. The doctrine of claim preclusion bars this type of sequential litigation. Lubrizol could have asserted its reformation claim in the Texas Action. The Settlement Agreement issues were the subject of intense litigation and formed the basis for the eventual judgment. The fact that these issues were first raised by Exxon in a defense does not prevent preclusion.

The district court granted defendants' motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. Consequently, we accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them. *Banks v. Wolk*, 918 F.2d 418, 419 (3d Cir.1990). Our review of the district court's legal determinations is plenary. We note that there is some disagreement in the courts of appeal over whether federal or state law of claim preclusion governs in successive diversity actions. *See Petromanagement Corp. v. Acme–Thomas Joint Venture*, 835 F.2d 1329, 1332–34 (10th Cir.1988). It appears that the majority of appellate courts apply federal law, at least where the issues are not "clearly substantive." *Id.* at 1333; *see also* Restatement (Second) of Judgments § 87 comment b, at 317–18 (1982); 1A Moore's Federal Practice ¶ 0.311[2], at 3179–83 (1990).[2]

The parties have assumed that federal law applies here. In several cases we have applied state law of preclusion when faced with successive diversity suits, but in none of these cases did we discuss the choice of law issue. *See Electro–Miniatures Corp. v. Wendon Co.*, 889 F.2d 41 (3d Cir.1989); *Melikian v. Corradetti*, 791 F.2d 274 (3d Cir.1986); *Provident Tradesmens Bank & Trust Co. v. Lumbermens Mut. Casualty Co.*, 411 F.2d 88, 94 (3d Cir.1969); *Makariw v. Rinard*, 336 F.2d 333 (3d Cir.1964). In *Hartmann v. Time, Inc.*, 166 F.2d 127, 138 (3d Cir.1947), *cert. denied*, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948), we held that state res judicata rules governed in successive diversity actions. *Accord Blum v. William Goldman Theatres, Inc.*, 174

2. Courts applying federal law generally hold that preclusion rules are the sort of procedural issues to which the *Erie* doctrine does not apply. As one court has remarked, "[o]ne of the strongest policies a court can have is that of determining the scope of its own judgments. It would be destructive of the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity.... [W]e think it would be a strange doctrine to allow a state to nullify the judgments of federal courts...." *Kern v. Hettinger*, 303 F.2d 333, 340 (2d Cir.1962) (citations omitted) (holding limited as recognized in *Weston*

*Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 713 n. 3 (2d Cir.1977)). *See also Aerojet-General Corp. v. Askew*, 511 F.2d 710, 715–18 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). Some courts apply federal law only to preclusion issues which are considered not to involve questions of substantive law. *See, e.g., Answering Serv., Inc. v. Egan*, 728 F.2d 1500, 1503–06 (D.C.Cir.1984). The example generally given of a substantive issue is the question of "privity." *See, e.g., Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 386–87 (10th Cir.1987); *Harnett v. Billman*, 800 F.2d 1308, 1312–13 (4th Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987).

F.2d 914, 915 (3d Cir.1949). However, those cases were decided before *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) and *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), established the current framework for determining which state rules are "substantive" for purposes of the *Erie* doctrine. In addition, *Hartmann* involved the preclusive effect of two prior judgments, one of which had been rendered by a state court.

■ We need not resolve this issue here, however, because our holding would be the same under both federal and state law. Federal law of claim preclusion requires a defendant to demonstrate that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action. *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir.1984). Only the third factor is disputed in this case. In *Athlone*, we noted that the term " 'cause of action' cannot be precisely defined, nor can a simple test be cited for use in determining what constitutes a cause of action for res judicata purposes." *Id.* (quoting *Donegal Steel Foundry Co. v. Accurate Prods. Co.*, 516 F.2d 583, 588 n. 10 (3d Cir.1975)). Rather, we look toward the "essential similarity of the underlying events giving rise to the various legal claims." *Davis v. United States Steel Supply*, 688 F.2d 166, 171 (3d Cir.1982) (in banc), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). This principle is "in keeping with '[t]he present trend ... in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.' " *Athlone*, 746 F.2d at 984 (quoting 1B J. Moore & J. Wicker, Moore's Federal Practice ¶ 0.410[1], at 359 (2d ed. 1983)).

In conducting this inquiry, we focus upon "whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same."

*Athlone*, 746 F.2d at 984. A mere difference in the theory of recovery is not dispositive. *Id.* Thus, the fact that Lubrizol relies on a new theory of "reformation" will not prevent preclusion. In both suits the acts complained of, the material facts alleged, and the witnesses and documentation required to prove the allegations are all the same. Focusing on these factors in light of the "essential similarity of the underlying events giving rise to the various legal claims," we find that the judgment in the Texas Action precludes Lubrizol's reformation claim.

Lubrizol attempts to avoid preclusion by arguing that the issues surrounding the scope of the Settlement Agreement were not elements of the "cause of action" asserted in the Texas Action, because that suit involved only the underlying computer dispute. Lubrizol would have us focus solely on the complaint in the Texas Action, ignoring the issues involving the Settlement Agreement that were the actual subject of the judgment. This view is too narrow. In the Texas Action, both the district court and the Court of Appeals found that the Settlement Agreement disposed of Lubrizol's claim. Lubrizol attempted to show that the Settlement Agreement did not release the computer dispute by introducing the same evidence it now offers in support of its reformation claim. This course was frustrated by the parol evidence rule. But as the Texas district court noted, "Lubrizol [did] not contend[ ] that the 'fraud, duress or mistake' exceptions apply to prevent application of the parol evidence rule." Memorandum Op. at 12. It cannot do so now in the guise of a reformation claim. The judgment in the Texas Action prevents Lubrizol from relitigating the disposition of its claim in that case.

Viewed in light of the actual issues adjudicated in the Texas Action, it is apparent that "the acts complained of" are the same in both suits. In both actions, Lubrizol sought to avoid the application of the Settlement Agreement to the computer dispute. In both suits, it asserted that Exxon had indicated before and after the Settlement Agreement was executed that it con-

sidered the computer dispute to be a separate matter. Both suits rely on Exxon's communications about the matters encompassed by the Settlement Agreement. In the Texas Action, this evidence was introduced to establish the meaning of the Settlement Agreement. In the present action, the evidence is introduced to demonstrate that the parties were "mistaken" when they entered into the Settlement Agreement. But multiple claims do not arise merely because " 'the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts....' " *Gregory v. Chehi*, 843 F.2d 111, 117 (3d Cir.1988) (quoting Restatement (Second) of Judgments § 24 comment c (1982)).

Moreover, the effect of the present action would be to resurrect the computer dispute, which formed the basis of the Texas Action. As Lubrizol informed the Texas district court in a pre-trial submission regarding the pending claims in that action, "a judgment granting reformation provides grounds for setting aside the judgment ... in this case." App. at 175. Thus, there is an "essential similarity of the underlying events giving rise to the various legal claims." The computer dispute is the "underlying event" in both actions. In *Athlone*, we noted the importance of "whether the wrong for which redress is sought is the same in both actions." 746 F.2d at 984. In both actions, the events surrounding the computer dispute constitute the wrong for which redress ultimately is sought.

From the foregoing discussion, it is also apparent that "the material facts alleged in each suit were the same." In each action, the parties' intent was alleged to be a critical fact. In the Texas Action, the Court of Appeals held that the parol evidence rule barred consideration of any extrinsic evidence of the parties' intent. But despite the fact that the court eventually refused to consider this evidence, Lubrizol alleged that this intent was a material fact. Furthermore, as noted above, it is not dispositive that the issues regarding the parties' intent and the meaning of the Settlement Agreement were not apparent from the complaint in the Texas Action. Lubrizol clearly had the opportunity to fully litigate these issues.

Finally, "the witnesses and documentation required to prove [the] allegations were the same." In the Texas Action, Lubrizol presented correspondence both before and after the Settlement Agreement was executed indicating that the parties never intended for the Settlement Agreement to encompass the computer dispute. That same correspondence is presented here as evidence of "mistake." Moreover, the Settlement Agreement itself is obviously a critical piece of documentation in both cases.

As noted in *Athlone*, we adhere to the " '[t]he present trend ... in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.' " 746 F.2d at 984 (quoting 1B J. Moore & J. Wicker, Moore's Federal Practice ¶ 0.410[1], at 359 (2d ed. 1983)). Lubrizol is attempting to overturn the judgment in the Texas Action by employing a legal theory it could have used then. But "[c]laim preclusion prevents a party from prevailing on issues he might have but did not assert in the first action." *Gregory*, 843 F.2d at 116. *See also Williamson v. Columbia Gas & Elec. Corp.*, 186 F.2d 464, 469 (3d Cir.1950) ("The theory [of res judicata] is that parties should not have to litigate issues which they have already litigated or had a reasonable opportunity to litigate."), *cert. denied*, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951).[3]

**3.** Lubrizol cites to *Northern Assurance Co. v. Grand View Building Ass'n*, 203 U.S. 106, 27 S.Ct. 27, 51 L.Ed. 109 (1906), which permitted a suit for reformation of a contract despite an earlier judgment on the meaning of the contract. That case, however, was decided before the merger of law and equity. At that time, it was not possible to bring both claims in the same action. *See id.* at 107, 27 S.Ct. at 27 ("The former decision of course is not an adjudication that the contract cannot be reformed. It was rendered in an action at law, and only decided that the contract could not be recovered upon as it stood, or be helped out by any doctrine of the common law.").

We reach the same result under state law. New Jersey employs the "entire controversy doctrine," which requires that a plaintiff present in one suit all claims arising out of a single controversy. *See, e.g., Cogdell v. Hospital Center at Orange,* 116 N.J. 7, 560 A.2d 1169 (1989). This doctrine affords preclusion to a federal court judgment in a subsequent state court action. *Blazer Corp. v. New Jersey Sports and Exposition Auth.,* 199 N.J.Super. 107, 488 A.2d 1025 (1985). As we have stated, "[t]he entire controversy doctrine reaches more broadly than the 'same cause of action' requirement of traditional res judicata doctrine." *Melikian v. Corradetti,* 791 F.2d 274, 279 (3d Cir.1986). *See also* Comment, *The Entire Controversy Doctrine: A Novel Approach to Judicial Efficiency,* 12 Seton Hall L.Rev. 260, 287 (1982) (entire controversy doctrine more preclusive than both the Restatement and traditional rule). As we have noted, Lubrizol's claims are precluded under federal law. We find that Lubrizol's claim would also be barred under New Jersey's more preclusive entire controversy doctrine. The current reformation claims, which seek to revive the computer dispute, stem from the same controversy underlying the Texas Action.

We also note that when the New Jersey Supreme Court applies the traditional law of claim preclusion, as distinguished from the entire controversy doctrine, it employs the same test found in federal law. *See Culver v. Insurance Co. of North Am.,* 115 N.J. 451, 461–63, 559 A.2d 400, 404–06 (1989). In *Culver,* which involved a procedural posture similar to this case, the court found that plaintiffs' claims were precluded under both the *Athlone* test and the entire controversy doctrine. In that case, an insurance company had prosecuted a subrogated tort claim on behalf of the insured parties. There was a separate agreement between the insurance company and the

insured parties regarding distribution of any recovery. After obtaining a settlement, the insurance company moved in the same action for enforcement of the distribution agreement. The insured parties opposed the motion, alleging that the agreement had been obtained through fraud. The court rejected this contention and enforced the agreement. Thereafter, the insured parties brought a second suit seeking to set aside the agreement. The New Jersey Supreme Court held that the suit was precluded by the judgment in the original tort action.

The court rejected the argument, embraced by the dissent, that the judgment in the initial tort action concerned only the validity of the underlying settlement arrangement and thus did not preclude a subsequent attack on the distribution agreement. The court held that

> In view of the detailed factual contentions presented by the parties addressed solely to the validity of their agreement, it is not readily inferable ... that the trial court believed that the dispute involved only the validity of the settlement with the third-party tortfeasors.

*Id.* 115 N.J. at 461, 559 A.2d at 405. The court then noted that even if the first court had failed to address the insured parties' claims regarding the distribution agreement, the subsequent action would still be barred. If the court's ruling was improper, it could have been addressed on appeal of the initial judgment. *Id.*

The court then continued that "the doctrine of *res judicata* applies unless the causes of action and essential issues were not substantially the same." *Id.* To determine whether there was substantial identity of causes of action, the New Jersey Supreme Court looked to the same criteria of identity formulated by this court in *Athlone.*[4] Applying the *Athlone* factors, the

---

4. As the New Jersey Supreme Court held,

To decide if two causes of action are the same, the court must consider:
(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions) *Gissen v.*

*Tackman,* 401 F.Supp. 310, 312 (D.N.J.1975); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first) *O'Shea v. Chrys-*

court found that the claims were substantially the same. The court also stressed the fact that "any verdict for plaintiffs in this case would completely overturn the ruling in the first action." *Id.* 115 N.J. at 462, 559 A.2d at 405.

In addition to finding claim preclusion under traditional doctrine, the court in *Culver* also held, pursuant to New Jersey's entire controversy doctrine, that "any new claims involving the subrogation agreement should have been raised in the subrogation lawsuit because that decision determined the entire controversy between the parties." *Id.* at 464, 559 A.2d at 406–07.

We believe the New Jersey Supreme Court would similarly bar Lubrizol's claims. The subsequent action in *Culver* was precluded even though the distribution agreement issues were first raised by the insurance company in the underlying tort suit. Similarly, the fact that the Settlement Agreement issues were first raised by Exxon does not alter the preclusive effect of the Texas judgment. Lubrizol clearly had the opportunity to litigate all aspects of the Settlement Agreement in the initial suit. Preclusion is not prevented by the fact that the current suit seeks reformation of the Agreement rather than a determination of its meaning. *See Massari v. Einsiedler,* 6 N.J. 303, 78 A.2d 572 (1951) (defendant who lost initial judgment on meaning of contract cannot bring subsequent action for reformation of contract).

■ Our holding applies to the claims against all defendants in this case. Although the district court did not decide the issue, we find that Exxon Research may gain the benefit of claim preclusion even though it was not a party to the Texas Action. We have noted that *"res judicata* may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants." *Gambocz v. Yelencsics,* 468 F.2d 837, 841 (3d Cir.1972). For purposes of claim preclu-

sion in this case, there is a close and significant relationship between Exxon and Exxon Research. Exxon Research is a wholly owned affiliate of Exxon, was a defendant in the initial New Jersey action, and was a signatory to the Settlement Agreement. *See, e.g., In re Teltronics Servs., Inc.,* 762 F.2d 185, 187 (2d Cir.1985) (wholly owned subsidiary of defendant in previous suit may benefit from claim preclusion); *Pan American Match Inc. v. Sears, Roebuck and Co.,* 454 F.2d 871, 874 (1st Cir.) (same), *cert. denied,* 409 U.S. 892, 93 S.Ct. 113, 34 L.Ed.2d 149 (1972). We note that a lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action. *Bruszewski v. United States,* 181 F.2d 419 (3d Cir.), *cert. denied,* 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950). The claim against Exxon Research is also precluded by New Jersey's entire controversy doctrine, which now bars claims against non-parties to a prior related proceeding. *Crispin v. Volkswagenwerk, A.G.,* 96 N.J. 336, 476 A.2d 250 (1984). Although *Crispin* applies only prospectively, the Texas Action was filed after that decision.

### III.

Despite intense litigation in the Texas Action over the scope of the Settlement Agreement, Lubrizol now argues its reformation claim is not precluded by the judgment there. We will not sanction this attempt to overturn that judgment. Lubrizol could have asserted its reformation claim in that suit. We will affirm the order of the district court.

---

ler Corporation, 206 F.Supp. 601, 605 (D.N.J. 1962); and (4) whether the *material* facts alleged are the same. [*United States v. Athlone*

Industries, Inc., 746 F.2d 977, 984 (3d Cir. 1984).]
115 N.J. at 461–62, 559 A.2d at 405.