703 A.2d 686

RALPH A. MOCCI, PLAINTIFF–APPELLANT, v. CARR ENGINEERING ASSOCIATES, P.A., MICHAEL T. CARR, IT CORPORATION, AND RONALD W. PRANN, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 19, 1997—Decided December 17, 1997.

Before Judges SHEBELL, A.A. RODRIGUEZ and COBURN.

*Kevin H. Marino* argued the cause for appellant (*Kevin H. Marino*, attorney; *Mr. Marino* and *Richard E. Shapiro*, on the brief).

*Lisa Olshen Adelsohn* argued the cause for respondents Carr Engineering Associates, P.A., and Michael T. Carr (*Suarez and Suarez*, attorneys; *Joseph M. Suarez*, of counsel; *Ms. Adelsohn*, on the brief).

*Thomas F. Quinn* argued the cause for respondents IT Corporation and Ronald W. Prann (*Wilson, Elser, Moskowitz, Edelman and Dicker,* attorneys; *Mr. Quinn,* of counsel; *Mr. Quinn* and *Brian J. Whiteman,* on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

Plaintiff Ralph A. Mocci appeals from a summary judgment granted to the defendants under the entire controversy doctrine.

The circumstances are unusual and involve an unprecedented application of the doctrine. The defendants negligently performed engineering services for the plaintiff, or so we must assume for purposes of this decision, in connection with his contract to purchase land for development. Having analyzed the wrong property, they advised plaintiff that the property he had contracted to purchase contained wetlands. In reliance upon their opinions, he cancelled the contract, pursuant to its terms, and sued for return of his deposit. In the trial, the defendants testified on his behalf as expert witnesses. Plaintiff prevailed at the trial, but later learned that his experts had mistakenly surveyed the wrong property. He then instituted the subject lawsuit. The Law Division judge held that the entire controversy doctrine barred the claim because of plaintiff's "failure" to join his own expert witnesses as parties in the original action. Since we are convinced that the entire controversy doctrine does not bar this action, and since we are also convinced that the principle of collateral estoppel, raised below but not addressed there by the court, is inapplicable, we reverse and remand.

I.

On November 9, 1987, plaintiff Mocci, a real estate developer, entered into a contract with Moyfrid Whiteman Mazzella to purchase a 9.353 acre parcel of land in Old Bridge for $950,000. The agreement was contingent upon Mocci's ability to obtain site plan approval for a subdivision of at least twenty single-family houses.

It also called for an initial payment of $25,000 which would be refunded to Mocci if it appeared within ninety days that there were substantial engineering soil problems on the site.

Mocci retained defendants Michael T. Carr and Carr Engineering Associates, P.A., to conduct the soil engineering analysis. The Carr defendants, in turn, retained defendant International Technology Corporation and its employee, defendant Ronald W. Prann, to delineate the presence of any wetlands on the property. When the defendants reported to Mocci that the property contained wetlands which would reduce the number of developable lots from twenty to fourteen, he unsuccessfully attempted to negotiate a reduction in the purchase price and then advised Mazzella that he was terminating the contract. She refused his demand for a return of the $25,000, and he instituted suit against her. In the trial of that action, defendants Carr and Prann testified as expert witnesses on behalf of Mocci. Mazzella testified that the experts were mistaken because there were no wetlands on her property. She insisted that they had staked and surveyed adjoining property owned by her neighbor. Her position was supported by an expert witness whose conclusions were based on an inspection of her property. On March 19, 1991, the jury returned a verdict in favor of Mocci and a judgment was entered against Mazzella for the $25,000.

In July, 1994, Mazzella instituted an action against the Carr defendants alleging that they had either been negligent in their wetlands analysis or had conspired with Mocci to render a false report to provide him with grounds for withdrawal from the contract. In November, 1994, she also moved, unsuccessfully, for a new trial respecting the original suit.[1] Her motion was supported by a certification signed by Prann on October 19, 1994, in

---

[1] The record, as submitted, does not actually indicate that a court ruled on the new trial motion, which was apparently submitted by Mazzella *pro se*. If there was such a ruling, there is no indication of its nature. Thus, for all we can tell, if it was decided, that decision may have been on procedural grounds rather than on the merits.

which he admitted that in carrying out his retainer for the Carr defendants he had mistakenly studied property which was 2,000 feet away from the Mazzella parcel.

The Mazzella–Carr action was dismissed on entire controversy grounds. Mazzella appealed and another part of the Appellate Division affirmed in an unreported opinion, A–3548–94T2, on November 15, 1995.

Mocci learned about the Prann certification some time in 1994 after the motion for a new trial had been denied. As a result, he instituted the instant action. Among other things, Mocci has certified, "After learning of the false, inaccurate and/or erroneous information provided by the Carr defendants and the ITC defendants, I decided not to seek execution of my judgment in *Mocci v. Mazzella.*"

## II.

In *Olds v. Donnelly,* 150 *N.J.* 424, 696 *A.*2d 633 (1997), the Court overruled *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 *N.J.* 280, 662 *A.*2d 509 (1995), to the extent that the latter case required application of the entire controversy doctrine to attorney-malpractice cases. After noting that the doctrine continues to evolve on a step-by-step basis with the ultimate goal being judicial fairness, the *Olds* Court said:

> Consistent with that approach, we confine our holding in this case to attorney-malpractice claims, without reaching other claims, such as "second-litigation malpractice claims against accountants, architects, engineers, physicians or psychologists."
>
> [150 *N.J.* at 446, 696 *A.*2d 633 (citation omitted).]

However, even though we are concerned here with "second-litigation malpractice claims against ... engineers," we are satisfied that *Circle Chevrolet* is distinguishable and does not require dismissal of the action.

We begin our analysis by reference to this statement of the *Circle Chevrolet* Court:

> The bounds of the entire controversy doctrine, however, are not unlimited. The doctrine does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action.
>
> [142 *N.J.* at 294, 662 *A.*2d 509 (citations omitted).]

Viewed properly, what we are dealing with here is a claim that was unknown at the time of the first litigation. Defendants contend that the claim was not unknown because of the positions taken by Mazzella and her expert witness in the original trial, which contradicted the opinions of Mocci's expert witnesses. But we are satisfied that the *Circle Chevrolet* Court was not using "unknown" in that sense. Consider the following statements by the Court:

> Plaintiff asserts that GH & C's continuing representation of Circle, up until January 1989, prevented Circle from discovering its professional malpractice claims. Moreover, Circle contends that Wasserman, who became Circle's legal counsel after GH & C's departure during the reformation litigation, failed to inform it of its possible claim against either GH & C or Petrics for the undetected mistake in the rent-increase formula. Wasserman, on the other hand, testified that he did notify plaintiff of the potential liability of both GH & C and Petrics, and that plaintiff responded that it did not intend to bring suit against either entity. Although the testimony regarding notification is indeterminate, the record demonstrates that plaintiff nevertheless had knowledge of the potential claim against both GH & C and Petrics even prior to plaintiff's initial January 26 meeting with Wasserman.
>
> · The record indicates that plaintiff knew in March 1988 that its rent overpayments were in part attributable to GH & C because the law firm admitted it was mistaken in the rent calculations. In his March 9, 1988 letter to Gaughran informing the firm of its mistaken calculation, Thomas Pliskin wrote, "All those persons involved with the determination of the rent, *including me,* have to the point of this letter been mistaken." (emphasis added). Plaintiff's brief submitted in support of summary judgment, in the settlement-reformation action, also states, *"All parties and attorneys* in the 1985 litigation mistakenly believed the calculations for the 'percentage' increase in the C.P.I. as stated by the attorney, Mr. Gaughran." (emphasis added). Therefore, plaintiff did have actual knowledge of GH & C's negligence as early as March 1988.
>
> A malpractice action accrues when a party suffers damages and discovers or through reasonable diligence should discover, that the damage is attributable to a professional's negligent advice. Given GH & C's clear admission of error for the purposes of the reformation litigation (Petrics also testified during the litigation that it was mistaken), it is reasonable to hold Circle to constructive knowledge of the malpractice claims. Reasonable diligence would have revealed to Circle the possibility of claims against GH & C and Petrics.
>
> [*Id.* at 298–99, 662 *A.*2d 509.]

*Circle Chevrolet* does not stand for the proposition, as defendants would suggest, that a party is obliged to join his own expert witnesses as defendants simply because their opinions are rejected by the other side. The above quoted statements clearly demonstrate that the entire controversy doctrine was deemed to be a bar because the plaintiff had learned from his own representatives that their errors had contributed to the loss suffered. Although there might be circumstances in which information acquired from other sources could give rise to the bar, at a minimum the other sources should not include opponent parties and opponent expert witnesses unless, perhaps, if their information demonstrated beyond any question the inaccuracy of the information and opinions on which plaintiff was relying. The record in the subject case contains no facts which would indicate that plaintiff was unreasonable in relying upon either the work done by his expert witnesses or their conclusions.

In *Olds,* the Court said:

> We have always emphasized that preclusion is a remedy of last resort. *See Gelber v. Zito Partnership,* 147 *N.J.* 561, 565, 688 *A.*2d 1044 (1997) (finding that "[c]ourts must carefully analyze" both fairness to the parties and fairness to the system of judicial administration "before dismissing claims or parties to a suit"). The purpose of the doctrine is not to bar meritorious claims, but to encourage litigants to bring to the attention of trial courts persons who should be joined in a proceeding.

> [150 *N.J.* at 446–47, 696 *A.*2d 633.]

Here, the defendants misled plaintiff causing him to institute an unwarranted lawsuit and lose the opportunity to profit from a significant contract. Their contention, that the opposing evidence in the original lawsuit should have put plaintiff on notice that he had a potential lawsuit against them, despite their continued adherence to their own views, is utterly inconsistent with any reasonable concept of fairness. Therefore, we find that the Law Division erred in dismissing the plaintiff's claim under the entire controversy doctrine. It is inapplicable in this case.

### III.

Defendants also contend that the action should have been dismissed on the alternative ground of collateral estoppel.

In *Hernandez v. Region Nine Housing Corp.*, 146 *N.J.* 645, 659, 684 *A.*2d 1385 (1996), the Court noted, "New Jersey courts follow the doctrine of collateral estoppel or the rule of issue preclusion described in the Restatement of Judgments." In pertinent part, the Restatement provides:

A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which considerations should be given include those enumerated in § 28 and also whether:

\*      \*      \*

(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.

[*Restatement (Second) of Judgments* § 29 (1982).]

Comment j states the following:

j. *Other circumstances.* The circumstances specified in this Section are illustrative rather than definitive of those that may be considered in determining application of issue preclusion. Important among such other circumstances is the disclosure that the prior determination was plainly wrong or that new evidence has become available that could likely lead to a different result. It is unnecessary that the party seeking to avoid preclusion show, as he must in seeking to set aside a judgment, that the evidence could not have been discovered with due diligence; the question is not whether a prior determination should be set aside but whether it should be treated as conclusive for further purposes.

[*Id.* at § 29 comment j.]

Comment j is directly on point. Clearly in this case the prior determination that wetlands were present on the Mazzella property was plainly wrong. Alternatively, new evidence, the Prann certification which became available years after the first trial, is likely to lead to a different result. *See Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 *U.S.* 313, 333–34, 91 *S.Ct.* 1434, 1445–46, 28 *L.Ed.*2d 788, 802–03 (1971)(considering for estoppel purposes whether the plaintiff was "deprived of crucial evidence" in the first litigation); *Ezagui v. Dow Chem. Corp.*, 598 *F.*2d 727, 732–33 (2nd Cir.1979) (taking into account new scientific evidence in determining application of collateral estoppel); *Glictronix Corp. v. American Tel. and Tel. Co.*, 603

*F.Supp.* 552, 577 (D.N.J.1984) (precluding collateral estoppel based in part on new evidence).

Therefore, we conclude that collateral estoppel does not bar the subject lawsuit.

Reversed and remanded.