John MURRAY, Plaintiff,

v.

CRYSTEX COMPOSITES LLC, Defendant.

Civil Action No. 08–2672 (WHW).

United States District Court, D. New Jersey.

May 28, 2009.

Robert J. Basil, Esq., Collier & Basil, P.C., New York, NY, for Plaintiff.

Robert George Kenny, Esq., Hoagland, Longo, Moran, Dunst & Doukas, Esqs., New Brunswick, NJ, for Defendant.

## OPINION

WALLS, Senior District Judge.

Defendant Crystex Composites LLC moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. The motion is granted.

### FACTS AND PROCEDURAL BACKGROUND

This case originates from the purchase out of bankruptcy of a division of Spaulding Composites Company, Inc., Mykroy/Mycalix ("M & M"), that manufactured glass and ceramic electronic components. *See Flores v. Murray*, 2007 WL 3034512 (N.J.Super.App.Div.2007).

In 2001, Spaulding filed for bankruptcy in the District of New Hampshire and hired plaintiff John Murray as a consultant accountant to review M & M. During the course of his work, Murray developed a friendship with a longtime M & M manager, George Flores. *See Flores v. Murray* at *1. Murray became interested in purchasing the unit and, after notifying Spaulding's creditors committee that he had concluded that M & M was a valuable asset, took steps toward purchasing it out of bankruptcy. (*See* Def.'s Opp'n 3–5.) Murray submitted a bid for M & M to the bankruptcy court, which rejected the bid but suggested that Murray make an offer directly to one of Spaulding's main creditors, CIT. (*See id.* at 4–5.) Ultimately, CIT agreed to sell M & M to Murray for $764,000. (*See id.* at 5.)

Murray, together with Flores, began to assemble a group of investors who would become the equity owners of defendant Crystex, to which the M & M Assets would be transferred. *See Flores v. Murray* at *1. Flores, Murray and a longtime friend of Murray's, Larry Milby, each agreed to contribute $200,000. Milby's niece agreed to contribute another $100,000. *See id.* The balance of the purchase price,

$264,290.50, was to be funded by a loan from CIT, secured by pledges of stock held by Murray and Milby in American Bio Medica Corporation ("ABMC"). *See id.* at *2.

Because Flores was concerned that the group did not have enough money in reserve for operations, he engaged three additional investors: Keith Savel, Howard Zimmerman and David See, who agreed to invest collectively $150,000 for a 10% interest in Crystex. *See id.* at *2–3.

At the outset, Flores contributed his $200,000 and Milby $190,000 but Murray failed to make a contribution. *See id.* at *2. Murray's justification for this failure was that his ABMC stock was "going to go through the roof" and it would be foolish to sell it before it increased in value. *See id.* When Savel, Zimmerman and See discovered that Murray would not be contributing $200,000 immediately, they insisted that Murray have some other personal liability. *See id.* at *2. The parties entered a memorandum of understanding, dated October 14, 2003, providing that Murray would contribute $200,000 within six months or "forfeit his shares and ownership in Crystex." *See id.* at *3. A certificate of formation for Crystex was filed on October 15, 2003. (*See* Pl.'s Supp., Ex. E.)

Spaulding moved in the bankruptcy court for authority to sell the real estate and business assets of M & M (the "M & M Assets") and, by an order dated October 15, 2003, the bankruptcy court granted Spaulding the authority to sell all of the M & M assets to "John F. Murray, or his nominee" for $764,290.50 on terms similar to those of a form purchase agreement attached to the order of the bankruptcy court. (*See* Def.'s Supp., Ex. D.) None of these documents identified Crystex as the buyer.

Murray hired an attorney, Ken Wanio, who prepared contracts for the sale of the M & M Assets, incorporated Crystex and dealt with Spaulding and CIT. (*See* Certification of John Murray in Opp'n to Mot. for Summ. J. ¶ 33 ("Murray Cert.").) Murray certifies that Wanio's authority was based on his understanding that Murray "would receive 35.75% of Crystex and would be the Managing Member." (*See id.* at ¶ 34.)

On October 23, 2003, Murray signed a resolution authorizing Crystex to purchase the M & M Assets but did so as the Managing Member of Crystex. (*See* Def.'s Supp., Ex. F.) Wanio later prepared a deed and bill of sale transferring ownership of M & M from Spaulding directly to Crystex. (*See* Def.'s Supp., Exs. G & H.) Murray claims that he did not direct Wanio to prepare these documents and that he did not object only because he believed he was the largest equity owner in Crystex. (*See* Murray Cert. ¶ 35.) There is no evidence that Murray expressly identified a nominee. (Pl.'s Opp'n. 6.)

Shortly after the purchase of the M & M Assets, Flores became concerned with Murray's performance. Murray had "refused to honor a financial obligation owed to one of the company's manufacturing representatives, wanted to penalize valued customers, and used offensive language when dealing with a Crystex accounts payable clerk." *Flores v. Murray* at *5. Flores discovered that Murray had been paying an additional, unauthorized salary to his son, who was employed by Crystex in the synthetic mica department, out of the Crystex operating account. *See id.* Certain checks to employees of Crystex bounced because Murray had failed to transfer funds from the operating account to the payroll account. *See id.* Finally, Murray had paid a personal debt out of company funds. *See id.*

At the same time, Murray still had not contributed his $200,000. *See id.* On May 3, 2004 Flores called a special meeting and with the other members of Crystex voted that Murray had "failed to live up to his obligations and that he no longer had an interest in Crystex." *Flores v. Murray* at *6. The members filed a complaint in the Superior Court of New Jersey, *Flores et al. v. Murray,* seeking, *inter alia,* a declaratory judgment that "due to Murray's failure to comply with his contractual obligations ... Murray never had any ownership interest in Crystex, or in the alternative ... [d]eclaring that as of the [special meeting] Murray had no ownership interest in Crystex ... [and] that Murray [was] not entitled to any compensation for his forfeit [sic] interest in Crystex." (Pl.'s App. at MA000005; Sup.Ct. of N.J., Dkt. No. L–769–05 (filed Feb. 18, 2005).) Crystex did not immediately join this suit, (Pl.'s Opp'n. 10.), but Murray later joined Crystex as a third-party defendant. (Pl.'s App. at MA000020.)

The superior court held that Murray had violated his contractual obligation to contribute $200,000 and had fraudulently induced the other investments by promising that he would contribute his $200,000 at a later date. (*See* Pl.'s App. MA000063–80; *Flores v. Murray,* No. L–769–05 (N.J.Super. Ct. Law Div.2006) ("Trial Court Transcript").) The trial court was "satisfied that the investment group [was] entitled to enforce the forfeiture clause" of the memorandum of understanding. According to the trial court, if Murray "did not come up with the $200,000, he suffered the possibility of losing his interest" in Crystex. (Pl.'s App. at MA000077; Trial Court Transcript at 224.)

The trial court added, "[w]hat is important here is that there's a total failure of consideration. He never paid the money, he never sold his stock, he never subjected

his own capital to the risk of a new company." *Id.* The court was "satisfied that Mr. Murray never acquired a membership interest in Crystex. And any interest of his is therefore void. Any interest of Murray in the ownership of Crystex is null and void and his shares are forfeited." *Id.*

The Appellate Division upheld the trial court's judgment that the memorandum of understanding controlled and that Murray had forfeited his interest in Crystex by failing to contribute the $200,000 but reversed the trial court's judgment that Murray had fraudulently induced the investors to invest in Crystex. *See Flores v. Murray* at *11. According to the Appellate Division, a fair reading of the memorandum of understanding, coupled with the credible testimony, indicated it "personally obligate[d] [Murray] to 'contribute the $200,000 investment within a six month period ending in March of 2004 or forfeit his shares and ownership in Crystex.'" *Id.* at *10 (internal citations omitted).

The Appellate Division further observed, [i]n consideration for [Murray's] contribution, the remaining parties agreed to contribute their capital investments so that M & M could be purchased and each party, including [Murray], could receive an ownership interest in the soon-to-be-formed Crystex. The testimony at trial established that the [Savel, Zimmerman and See] would not have risked an investment in Crystex without [Murray's] capital contribution had defendant refused to agree to the terms of the [memorandum of understanding]. They accepted the risk of contributing capital investments without a present contribution by [Murray] in order to form Crystex in exchange for [Murray's] promise

to contribute his investment by the end of March 2004 or forfeit his ownership interest. The judge correctly found that there was mutual consideration and the [memorandum of understanding] was enforceable.

*Id.* at *10. The Appellate Division adopted the trial court's conclusion that "there's a total failure of consideration" and Murray "never acquired a membership interest in Crystex." *Id.* at *11 (quoting *Flores v. Murray*, No. L–769–05 at 224). The New Jersey Supreme Court denied Murray's petition for certification on January 24, 2008. (Def.'s Statement of Material Facts Not in Dispute ¶ 12.)

Murray filed the present complaint on May 27, 2008, claiming that the order of the bankruptcy court granted him ownership of the M & M assets. Murray claims that, had he known at the time of the transaction with Spaulding that he was not an equity owner of Crystex, he would have objected to the transfer. (*See* Pl.'s Opp'n. 9.) By Count One, Murray seeks a declaratory judgment "establishing that Murray is the legal owner of the real estate and personal property awarded to him by [the order of the bankruptcy court.]" (*See* Compl. ¶¶ 27–30.) In Count Two, Murray claims Crystex has been unjustly enriched by its unlawful possession of the M & M assets. (*See* Compl. ¶¶ 31–32.) And in Count Three, Murray claims misappropriation of the M & M Assets by Crystex. (*See* Compl. ¶¶ 33–34.)

Defendant moves for summary judgment on two grounds. First, defendant argues that plaintiff's claims are procedurally barred by the New Jersey state court judgments under either the entire controversy doctrine,[1] res judicata or collateral

---

**1.** Plaintiff conceded at oral argument that the procedural law of New Jersey, including the entire controversy doctrine, applied in this case. *See Del. River Port Auth. v. FOP, Penn–Jersey Lodge 30*, 290 F.3d 567, 572–73 (3d Cir.2002) (Full Faith and Credit Act requires

estoppel. Alternatively, defendant proposes that plaintiff's claim should be dismissed because Murray never purchased an interest in the M & M Assets and, even if he had, he appointed Crystex as his nominee. Because the Court concludes that the entire controversy doctrine bars plaintiff's claims it need not address defendant's other arguments.

## LEGAL STANDARD

The entire controversy doctrine is often defined by comparison to claim preclusion so a brief discussion of traditional res judicata claim preclusion is helpful.

### Claim Preclusion

■ Traditional claim preclusion provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877). The bar of claim preclusion applies "not only to 'all matters litigated and determined by such judgment but also as to all relevant issues which could have been presented, but were not.'" *Culver v. Insurance Co. of N. Am.*, 115 N.J. 451, 463, 559 A.2d 400, 406 (1989) (quoting *Anselmo v. Hardin*, 253 F.2d 165, 168 (3d Cir.1958)).

■ Under both federal and New Jersey law, claim preclusion requires "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same *transaction or occurrence*

as the claim in the earlier one." *McNeil v. Legislative Apportionment Comm'n*, 177 N.J. 364, 395, 828 A.2d 840 (2003) (emphasis added); *see also Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (1991); *Culver*, 115 N.J. at 460–63, 559 A.2d at 404–406 (applying the federal claim preclusion standard).

■ In determining if a claim arises from the same "transaction or occurrence," the Third Circuit has looked for the "essential similarity of the underlying events giving rise to the various legal claims." *Lubrizol*, 929 F.2d at 963 (quoting *Davis v. United States Steel Supply*, 688 F.2d 166, 171 (3d Cir.1982) (en banc), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983)); *see also United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983–84 (3d Cir.1984). The proper focus is "whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same." *Athlone*, 746 F.2d at 984.

### Entire Controversy Doctrine

■ The entire controversy doctrine "reaches more broadly than the 'same cause of action' requirement of traditional res judicata'" claim preclusion. *Lubrizol*, 929 F.2d at 965 (quoting *Melikian v. Corradetti*, 791 F.2d 274, 279 (3d Cir.1986)). A party must bring "all *related* claims against a particular adversary" or be barred from bringing a later action based on such claims. *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir.2008) (quoting *Melikian*, 791 F.2d at 279) (emphasis added); *see also Lubrizol*, 929 F.2d at 965 (citing *Cogdell v. Hospital Center at Orange*, 116 N.J. 7, 560 A.2d 1169 (1989)). This doctrine is

that state court decisions be given "the same preclusive effect in federal court they would

be given in the courts of the rendering state"); *see also* 28 U.S.C. § 1738.

codified in the New Jersey Court Rules, which provide that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." New Jersey Court Rules, R. 4: 30A (2009).

> "The test for whether claims are 'related' such that they must be brought in a single action under New Jersey entire controversy doctrine ... [is] as follows: if parties or persons will, after final judgment is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions, the omitted components of the dispute or controversy must be regarded as constituting an element of one mandatory unit of litigation."

*DiTrolio v. Antiles,* 142 N.J. 253, 268, 662 A.2d 494, 502 (1995) (citing *O'Shea v. Amoco Oil Co.,* 886 F.2d 584, 590–91 (3d Cir. 1989)). "Under the entire controversy doctrine, a party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action." *In re Mullarkey,* 536 F.3d at 229 (citing *Paramount Aviation Corp. v. Agusta,* 178 F.3d 132, 137 (3d Cir.1999)); *but see Fornarotto v. American Waterworks Co.,* 144 F.3d 276, 280 (3d Cir.1998) (entire controversy doctrine does not apply when two causes of action do not have sufficient commonality).

The doctrine aims to "assure that all aspects of a legal dispute occur in a single lawsuit," *Olds v. Donnelly,* 150 N.J. 424, 431 696 A.2d 633, 637 (1997), and strives for three goals "(1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to parties to an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay." *In re Mullarkey,* 536 F.3d at 229 (citing *Paramount Aviation,* 178 F.3d at 137) (citing *DiTrolio,* 662 A.2d at 502).

■ Fairness and equity underpin both the entire controversy doctrine and traditional claim preclusion. Preclusion is generally disfavored, *see Olds,* 150 N.J. at 446, 696 A.2d 633, but the doctrine is flexible and is to be applied case-by-case with an appreciation of fairness to the parties. *See In re Mullarkey,* 536 F.3d at 229 (citing *Paramount Aviation,* 178 F.3d at 137). "New Jersey's application of the entire controversy doctrine 'emphasizes the essential unfairness of forcing parties and courts to rerun a course previously run.'" *Fields v. Thompson Printing Co.,* 363 F.3d 259, 266 (3d Cir.2004) (quoting *Joel v. Morrocco,* 147 N.J. 546, 688 A.2d 1036, 1040 (1997)); *see also Mocci v. Carr Engineering Assoc.,* 306 N.J.Super. 302, 308, 703 A.2d 686, 689 (App.Div.1997) (refusing to apply the entire controversy doctrine because preclusion would have been "utterly inconsistent with any reasonable concept of fairness").

■ Accordingly, the doctrine does not bar claims that are "unknown, unarisen, or unaccrued at the time of the original action." *Mocci,* 703 A.2d at 688 (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 N.J. 280, 662 A.2d 509 (1995) (*overruled by Olds,* 696 A.2d at 642)); *see also In re Mullarkey,* 536 F.3d 215 (3d Cir.2008) (overturning district court's application of the entire controversy doctrine to a suit alleging fraud in the course of a foreclosure proceeding because claim may not have accrued or been justiciable in the foreclosure proceeding).

Whether a claim is "unknown, unarisen or unaccrued" turns on the knowledge or constructive knowledge of the party who could have brought the claim. As exam-

ple, the *Mocci* plaintiff, a real estate developer, had agreed to purchase a parcel of land and hired the defendant, an engineer, to conduct soil analysis. *See Mocci,* 703 A.2d at 687. The engineer mistakenly reported that wetlands were present on the parcel. Because the presence of wetlands on the parcel would significantly diminish its value, the developer canceled the contract. *See id.* Litigation with the seller of the parcel ensued. At trial, the seller's experts testified that the engineer had been negligent. This testimony was contradicted by the developer's witnesses. After prevailing in the suit, the developer learned that the engineer had in fact been negligent and no wetlands were present on the parcel. The developer brought suit against the engineer for negligence. *See id.* The Law Division concluded that the negligence claim arose out of the same transaction as the earlier litigation and was barred by the entire controversy doctrine. *See id.* at 687. The Appellate Division reversed, holding that the claim against the engineer was not barred because information from opponent parties or opponent expert witnesses did not provide constructive notice that a party must join his own expert witness as a defendant. *See id.* at 688–89.

### DISCUSSION

■ Here, plaintiff failed to assert his claims to ownership of the M & M Assets in the earlier proceedings. It is obvious that such claims arose from the same series of transactions as the transactions underlying the New Jersey proceedings. It is of no moment that Crystex was not joined at the outset because the entire controversy doctrine is not limited to the outset of a matter. Plaintiff here, defendant there, asserted six claims against

Crystex as a third-party defendant.[2] .(*See* Pl.'s App. MA000035–46.) It was unreasonable for Murray to fail to assert his claim to ownership of the M & M Assets then. It is also irrelevant that Crystex itself did not join in the members' request for a declaratory judgment that Murray never held an equity interest. Crystex was a party and Murray was on notice, by the pleadings of the members, that he could be found to not have been an equity member of Crystex. In contrast to other doctrines of preclusion, under the entire controversy doctrine, parties are required to assert all claims related to the same series of transactions, not just those which will defeat the claim against them.

The entire controversy doctrine required Murray to assert his claim to ownership of the M & M Assets unless they were "unknown, unarisen or unaccrued" at the time of the first proceeding. Murray's argument that his claim had not accrued is weakened by the Third Circuit's observation that

> "[if] the litigants in the action as framed will, after final judgment therein is entered, be likely to have to engage in additional litigation in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions, then the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation."

*Melikian v. Corradetti,* 791 F.2d 274, 279–80 (3d Cir.1986) (quoting *Wm. Blanchard Co. v. Beach Concrete Co.,* 150 N.J.Super. 277, 293–94, 375 A.2d 675, 683–84 (App. Div.1977)), *cert. denied* 75 N.J. 528, 384 A.2d 507 (1977). Certainly, additional litigation was more than likely. Plaintiff

---

**2.** Murray's claims included breach of the Crystex operating agreement, breach of his employment contract, breach of implied cove-

nant of good faith and fair dealing, unjust enrichment, common law and statutory oppression and civil conspiracy.

knew that a finding that he never held an interest would require him to assert his ownership rights in the M & M assets in a later matter. The entire controversy doctrine requires the parties to do more than simply respond to the claims of their adversaries. A party cannot neglect to assert a claim clearly related to the subject matter of the litigation simply because an opposing party asserts its claim in the alternative.

Plaintiff's argument that his unjust enrichment claim had not accrued in the earlier proceeding is equally unavailing. To prove unjust enrichment a party must show "it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519, 526 (1994). Plaintiff correctly observes that the common thread is "that the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." *Associates Commercial Corp. v. Wallia*, 211 N.J.Super. 231, 244, 511 A.2d 709, 716 (App.Div.1986). Plaintiff insists he could not have received restitution for the purported unjust enrichment until the true facts at the time of the transaction were revealed, that is, until it was determined that he never held an equity interest. But plaintiff had notice that the trial court might determine that he never held an equity stake. Given that notice, the entire controversy doctrine required plaintiff to assert his claim to ownership of the M & M Assets.

This is not a case where plaintiff's claim would not accrue until after proceedings were completed. *See, e.g., Olds* at 437, 696 A.2d 633 (legal malpractice claim not barred by entire controversy doctrine because client must have been injured and

injury requires prejudicial outcome). Murray's purported damages occurred not during the trial but at the time of the transaction. To resay, Murray's failure to assert his claim meant that, after a final judgment, it was likely that the parties would "have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities" that derived from the purchase of M & M. *See DiTrolio*, 662 A.2d at 502.

Plaintiff insists that no judicial economy would have been served by resolving ownership in the earlier trial because "Murray would have been required to speculate about the potential consequences of all of the possible outcomes of the case." (Pl.'s Opp'n at 23.) According to plaintiff, to punish him for failing to assert his ownership claim would violate the twin pillars of the entire controversy doctrine: fairness to the parties and fairness to the system of judicial administration. Plaintiff entreats that, unlike other cases where courts have applied the entire controversy doctrine to bar claims, his was not a deliberate claim-splitting strategy.

Although, plaintiff is both correct that the polestar of the entire controversy doctrine is fairness, *See K–Land Corp. No. 28 v. Landis Sewerage Auth.*, 173 N.J. 59, 74, 800 A.2d 861, 871 (2002), and that many of the leading cases imposing a procedural bar under the entire controversy doctrine involved parties who strategically withheld claims, *See K–Land*, 173 N.J. 59, 800 A.2d 861 at 868 (discussing relevant cases), strategic behavior is not a prerequisite to imposition of the procedural bar. While strategic behavior might indicate that a party who failed to assert a related claim in an earlier action could have asserted such claim and could gird a conclusion that justice favors barring such claims, the inquiry still focuses on whether a claim was "unknown, unarisen or unaccrued."

*K–Land* is illustrative of this point. In *K–Land* the City of Vineland sought a declaratory judgment to establish ownership of a sewer main installed by K–Land, joining K–Land and several other parties who intended to use the sewer main. *See K–Land*, 800 A.2d at 863. K–Land had no interest in ownership of the main, although it did have an outstanding concern as to how the parties to the suit would compensate it for the cost of constructing the sewer main. Because K–Land believed that the pending suit involved only ownership of the main it did not respond to the suit. Default was entered against K–Land. The other parties later entered a consent judgment which affected K–Land's reimbursement for costs. *See id.* at 865–66. K–Land instituted an action against the parties to the consent judgment seeking reimbursement. *See id.* at 865. The trial court dismissed K–Land's suit, applying the entire controversy doctrine. *See id.* at 867. The Appellate Division affirmed, concluding that, because the ownership of the sewer main was at issue, K–Land could infer that the rights and regulations governing the use of such main would also be at issue. *See id.*

In overturning the Appellate Division, the New Jersey Supreme Court drew a distinction between "deliberate and calculated claim-splitting strategies" and an "innocent omission by an *uninformed* litigant." *Id.* at 70, 800 A.2d 861 (quoting *Prevratil v. Mohr*, 145 N.J. 180, 203, 678 A.2d 243 (1996) (Stein, J. dissenting)) (emphasis added). The Supreme Court concluded that it would be unfair to require K–Land to file a cross-claim because the suit sought only to clear title. Moreover, K–Land could not have been on notice that the consent judgment would affect its right to reimbursement because the consent judgment was not entered until after K–Land had defaulted. *Id.* at 871. Finally, the *K–Land* court observed that there was

no prejudice to the *K–Land* defendants because the suit on reimbursement would be "no more difficult or inconvenient to defend against than if it had been asserted in the declaratory judgment action." *K–Land*, 800 A.2d at 871–72.

Plaintiff bears little resemblance to the *K–Land* plaintiff. Unlike the *K–Land* plaintiff, Murray was aware of the potential of a judgment that would implicate his ownership of the M & M Assets. The defendants in the state proceeding directly requested that the state court find Murray never had any interest in Crystex. Moreover, unlike *K–Land* where there was no risk of prejudice to the other parties, defendants in this action would be clearly prejudiced by having to relitigate issues surrounding the purchase of the M & M Assets, the formation of Crystex and the related transactions.

Plaintiff's concern for judicial economy had he been forced to "speculate" as to the "many possible outcomes" of the earlier proceeding is also misplaced. There were only two possible outcomes, both of which implicated Murray's claim of ownership to the M & M Assets. Either Murray held an interest until the special hearing or he never held an interest. That Murray concedes he only has a claim to the M & M Assets in the latter case, (Pl.'s Opp'n 13.), only strengthens the conclusion that it was unreasonable for Murray to fail to assert this claim. When faced with a 50–50 chance of the total loss of an asset to which parties claim full ownership, it is unreasonable to fail to assert such claim. Because Crystex plead in the alternative does not allow Murray to reserve a claim that is clearly implicated by one of the alternatives. Moreover, much of the same ground covered in the state proceeding would be unearthed now in a trial involving Murray's purported ownership of the M & M Assets. Plaintiff's appeals to equi-

ty notwithstanding, fairness and efficiency favor defendants.

**CONCLUSION**

Defendant's motion for summary judgment is granted. Plaintiff's complaint is dismissed with prejudice.